The next case is the Estate of Caldwell Jones, Jr. v. Live Well Financial. Mr. Meacham is here for the appellants. And Mr. Flynn is finally here for the appellee. Mr. Flynn, you were late for court this morning. You had to be here at 9 o'clock. 8.30 you were supposed to be here. We'll start the argument. Mr. Meacham. Good morning, Your Honor. Members of the panel of this distinguished court, Mr. Flynn, my name is Daniel R. Meacham, and I have the pleasure of representing the Estate of Caldwell Jones, the Executives Vanessa Jones and their minor child. I know I have 15 minutes, and I did probably 35 minutes worth of argument, so I'll try to get right to the meat of it. We will first look at the Statute 12 U.S.C. section 1715Z20J and argue the issue whether the actions of the appellee in attempting to foreclose on a surviving non-debtor spouse was in violation of this statute, and two, whether the terms of the contract security deed, whether the appellant as a surviving homeowner was also a party to the contract, either as a borrower. I'm looking at the statute now. Yes, sir. And tell me why I'm misinterpreting the statute, because it seems to me that it only applies to the Department of Housing and Urban Development when it says, quote, the secretary may not insure a home that fails to protect the non-borrowing spouse. It doesn't say anything about the mortgagee, right? What does it say about the mortgagee? You're correct, Judge Wilson. It does not, but it does define who a homeowner is. It defines a surviving spouse as a homeowner. Therefore, if you couple the interpretation and the statement of the statute defining the surviving spouse as a homeowner and you look to the terms of the contract to determine whether or not that surviving spouse homeowner is also a contracting party, you come up with the determination of whether or not that homeowner surviving spouse has the contractual rights and obligations to enforce and to raise issues related to that contract. If you go to page 39 of the security deed, paragraph 9, it talks about, and this is the contract, it talks about specifically the surviving borrower. Now, the interesting aspect of that, Judge, is that . . . That's because that's a form that is prepared on the assumption that there may be two or more borrowers, right? That is correct, Judge. Unfortunately, this particular one only has one borrower. Well, Judge Benson, I would respectfully disagree. If you go to page 44 and the language specifically says, and I want to quote it directly, borrower accepts and agrees to the terms and covenants contained in the security instrument and any rider executed by borrower and recorded with it. This is signed by Vanessa Jones, dated 7-28-2014, and Carwell Jones. There is no distinction whether or not Ms. Jones is not a part of that contract. There is no distinction claiming that she is a witness. It is a form that may be poorly drafted but does not distinguish as it relates to the contracting parties that Ms. Jones, as the executing party in that contract, has no rights and remedies pursuant to that contract. I would point out . . . But that doesn't incorporate the statutory language. It doesn't say the statute is incorporated into this agreement. Well, Your Honor, I was in addressing Judge Wilson's question about the statute. I pointed out that the question becomes whether or not homeowner and debtor are viewed similarly, whether or not the surviving borrower is the same as the surviving homeowner's spouse. Can I ask you just a question? Because I thought that in your brief repeatedly you referred to Vanessa as a non-borrowing spouse. That is correct, Your Honor. So how is she a borrower under the contract? Because she's referred to in the contract as a borrower. On the line you just described? On the lines that I described. Not just once, Judge Newsom. I would suggest to you that Paragraph 9, which is the acceleration clause that she signs, basically says that she has the right as the borrower to remain in the property, if you will, if she complies to certain things. Paying taxes, that she was the marriage spouse at the time of this document, that she was a . . . The contract is in the record now. The contract between Caldwell Jones and Livewell is in the record. So if we go to that contract and we look to the language of the contract, we'll see language in the contract that protects the non-borrowing spouse, Vanessa Jones? You will see language in the contract . . . Where will I find that in the contract? I'm going to try to get there real quick, Judge Wilson. If you go to Paragraph 9A1, the mortgage states that the lender may require immediate . . . What page is that on, please? You would ask me that, Judge. I think it is page 40. I think it's page 39. I could be wrong. It could be 38, but I think it's page 39. Paragraph 9A1 of the mortgage statement states that lender may require immediate payment in full of all sums secured in the security instrument if a borrower dies and the property is not the principal residence of the surviving borrower. You can't, on the one hand . . . But if she's not a surviving borrower, where does the definition pick her up as a surviving borrower? Well, Your Honor, I would ask this question. If she's not the borrower, then why have her signed on the borrower line of the agreement? Wait a minute now. Vanessa signed the contract? She signed on the executed line for borrower along with Caldwell-Jones. So it becomes a non-sequitur, non-sensical argument to say, on the one hand, she is the contracting party. Though she may be deemed to be a non-debtor surviving spouse, but for terms of the contract, she is a signature on the contract, and now she can't enforce the contract. It makes no logical sense. She's a borrower? She is a borrower as it relates to the acceleration clause. She's a borrower as it relates to the ability . . . Wait, wait, wait. I haven't looked at the actual mortgage agreement. But what you're saying is she's not named anywhere in the agreement as a borrower, but she signed at the end on the borrower's line along with her husband. She was required by the appellee to sign on the line with her husband as the borrower. And this is under Georgia law. You don't have homestead and all the other factors that sometimes come into play. So basically, she's not waiving anything. She's just signing. That's all she's doing. I wouldn't say she's not waiving anything and she's signing. I would think that she's signing with all the rights and obligations as a signature on a contract, Your Honor. Otherwise, why . . . I'm sorry. Please go. I didn't mean to interrupt you. Please keep going. Otherwise, why have her sign on a contract which you then say she cannot enforce? It's a nonsensical . . . Let me make sure I know where she signed. She signed at the end of the document under the borrower's lines. It's a signature of borrower. She signed . . . I'm sorry. Even though she's not named in the agreement as a borrower. She signed in three places. The first place, Judge Vinson, would be at the end of the acceleration, and not just Judge Vinson but Judge Wilson and Newsom. She signs at the end of the acceleration paragraph saying that she agrees that if these things happen, she doesn't pay taxes, she's not a resident of the house, they can immediately ask for a lump sum. She signs there. Then, as the panel knows, in the security . . . Let's just stop there. What that does, that says she agrees to vacate if she's not a borrower. She gives the owner of the mortgage the right to accelerate it. Acceleration clause. But, Judge, I would respectfully say this to you, Judge Vinson. You can't ignore . . . Well, let me say it then. I'm an old lawyer. In a more respectful way, I'm suggesting to the court not to ignore the language which says borrower accepts and agrees to the terms of the covenant and then have two people sign it. So can I ask you, Mike, the question I was going to ask you a minute ago? You said that the mortgagee required her to sign. Yes, sir. Is there evidence in the record of that? I mean, like I'm just thinking about my own personal experience. If there's a document before me and my wife and I aren't sure, like who should sign this thing? Just in the exercise of sort of caution, we're both going to sign it. There is nothing in the record, because there was no testimony or any affidavit signed by Ms. Jones who was just here, that she was required to do so, other than my representation to you today that she was required to do so. That seems to be a new argument you're making, though. Well, Your Honor, I don't think it's a new argument, but I think it is a probably more fleshed out argument than what is in front of you that is written. Well, this wasn't really, I mean, what you put in your brief was you're relying primarily on a policy and a congressional intent argument rather than— That's correct, and that's my rebuttal argument, Your Honor, that I was saving the last five minutes to argue. Your better argument would be the one that you're making today, and we have to take a look at the contract, because I understand your argument today is if we look at that contract, she's a signatory to the contract, and Livewell makes certain agreements with Mrs. Jones, right? That's correct. Livewell entered into a contract not just with Caldwell, but with Vanessa Jones as well. Is that your argument? That's correct, Your Honor. It just takes my brain a little time to kind of come up to speed with everything that I should be arguing with. That is, in fact, the case. All right. Well, let's hear from Livewell and see what they have to say about that. Good morning, Your Honor. Steve Flynn for the Appleeigh Livewell Financial, Inc. Mr. Meacham, may it please the Court. Before I get into my main argument, I think the Court has raised some issues that need to be fleshed out. The argument being made today, I think as the Court has indicated, Judge Vinson in particular, the argument being made today is an argument that doesn't appear to have been briefed by the appellant in this case, as you said, Judge Wilson. The argument on appeal is a policy argument as to whether or not the subject statute should be applied to the non-borrowing spouse and allow her to stay in the home indefinitely following the death of the sole borrower, Mr. Jones. The position taken below, and it's fully fleshed out in the record, and the position taken in the initial briefs is that Mrs. Jones is a non-borrowing spouse. She actually filed an affidavit in the record to that effect. So it's a bit of a new argument, Your Honors. I'm happy to discuss it. It's actually an argument that we discussed with Judge Flanagan. What's in the contract? Did she sign the contract with Livewell? Yes, Your Honor. She is a signatory to the contract. However, the first page of that document defines borrower as Caldwell Jones, Jr., a married man. That is at ECF Doc 1-1, page 97. It's the first page of the document. Given the record that we currently have, we're at the 12B6 stage, Your Honors. We don't know exactly why she did that. We also noted before Judge Thrash, and he noted it in his order, Mrs. Jones had actually conveyed her interest to Mr. Jones back in 2012. Mr. Jones was the sole owner of the property at that time. That's at ECF Doc 2-5. It was attached to our reply brief. But she is a surviving spouse. And so Livewell's argument, as I understand it, is that she is a non-borrowing surviving spouse. Is that right? That is correct, Judge. Okay. And what does the contract—she signed the contract. What does the contract say about protecting her? The contract is not specific to that, Your Honor. What's in paragraph 9 on pages 38 or 39? Yes, Your Honor. There are two different acceleration provisions in the contract, Judge. The first requires approval of the secretary, meaning the Secretary of the Department of Housing and Urban Development. The other section of paragraph 9 allows immediate payment in full without secretary approval. So there was a distinction made in the mortgage document between conditions that required secretary approval and conditions that did not. There's section A and B on the same page of the document. We're obviously proceeding under the section that does not require secretary approval. That would be section 9A of the security deed. That section says, in relevant part, quote, lender may require immediate payment in full of all sums secured by the security instrument if, so part A, a borrower dies and the property is not the principal residence of at least one surviving borrower, end quote. That's the relevant provision here, Your Honors. It's undisputed that Mr. Jones passed away in 2014, approximately two months after the closing on this loan. I believe he died of a heart attack, tragically, Your Honors. But it's undisputed that Mr. Jones was the sole borrower on this loan. Mr. Jones, in fact, was the only individual among himself and his wife that would have been eligible under the terms of this loan. He was the sole loaner, right? Yes, Your Honor. That's, again, at ECF Doc 2-5. The warranty deed conveying title from Mrs. Jones to Mr. Jones is in the record in this case. So that's undisputed. Mr. Jones is the sole borrower. He's the sole individual that would have been eligible for a reverse mortgage under the very code provisions that are being relied upon here by the appellant. Mrs. Jones, I believe at the time, was 52 years old. You have to be a minimum. But none of that matters for the purpose of the HUD requirement, though, right? That's exactly— Even if he's the sole owner and he's the sole borrower, Congress intended that the Department of Housing and Urban Development shouldn't insure of a reverse mortgage like that, right? Your Honor, I agree with you that the subject statutory provision imposes certain conditions upon what the Secretary of HUD can and cannot do. That's a plain reading. So there's an intent by Congress to protect the surviving spouses. Congress doesn't want surviving spouses to get kicked out of the home in the event that there's a foreclosure, right? I think there was certainly an intent there, Your Honor, yes. But I think also we have to take Congress at its word. Congress's statutes that they pass mean what they say. And in this particular instance, Congress said, this is what we want the Secretary to do. We want the Secretary to impose certain conditions upon mortgages that the Secretary will agree to insure under this particular federal program. So HUD goofed in insuring this loan? Your Honor, I can't speak for HUD on this. Obviously, I'm not here for them. But, I mean, this loan doesn't meet their statutory requirements. Again, Your Honor, I don't want to put HUD in a corner, so to speak, because I can't speak for them. But I will say that the statute in question says, HUD, you can do this. You can insure these types of loans. And whether or not HUD did that or did not do that or whether this loan meets those particular requirements for my client's purposes is really immaterial. I would almost like to win the case. I mean, like your position is I went on the contract statute be damned, basically. And don't you have to say? I mean, I realize it's a little uncomfortable, but don't you really have to say that, yeah, this was not an insurable loan under the HUD program? Because the HUD program says protect surviving spouse as borrower or not. And you've got to say, yeah, sure, surviving spouse, but not a borrower. Your Honor, very good question, Judge. And in response, I think I will say whether or not HUD should or should not have insured this particular mortgage. The fact is that they did. My client has an insurance agreement with HUD that's in place. So whether or not HUD goofed, we have our agreement with HUD. But then we also have a separate agreement with the sole borrower, Mr. Jones, as it relates to this particular mortgage. So I will say if HUD should not have insured this particular mortgage, then that's on them. Let me ask you, Mr. Flynn. Your client, LiveWell, didn't originate this reverse mortgage. It was originated by someone else, and you bought it probably in a pool of mortgages or something? I'm not sure of the particular securitization aspect of this, Your Honor, whether this was a pool or a solo loan. I know that my client received an assignment of this particular security. I believe it was in 2015, Judge. You bought it, right? Yes, acquired it in some way, shape, or form. So you had nothing to do with the way this was drafted originally? No, that's correct, Judge, yes. But you are subject to the contract and its provisions. Why did you have Mrs. Jones signed on these three places that Mr. Meacham talked about? One is the acceleration clause. We never got to where the other two signatures are. Why? Your Honor, I think Your Honor's provisions or Your Honor's alludence to Florida is actually instructive here. And the fact that Your Honor is from the great state of Florida, I think, may be helpful here. And I think Your Honor is correct, and I'm hypothesizing just a little bit here, Judge, but I think the reason probably was because this was a form, and in Florida in particular, there are some constitutional provisions that would come into play that, as Your Honor alluded to, don't apply here in Georgia, homestead provisions and the like. But that's speculation on my part, Judge. That's not in the record. But I want to look at the contract at the conclusion of the oral argument. But are you telling me there's nothing in the contract that would protect Mrs. Jones against foreclosure as long as she is a surviving spouse and living in the house? There's nothing in the contract that would do that? Your Honor, yes, Judge, sorry to interrupt. Yes, I think the closest provision would be the provisions that we discussed earlier, the paragraph 9, subsection A, authorizing acceleration under certain provisions if the borrower dies and the property is not the residence of at least one surviving borrower. I think that is the closest provision that the court will find. Isn't that the case that we have here? Mr. Jones died and he left a surviving spouse in the house? Well, Your Honor, the contract itself says surviving borrower, and I think that's an important distinction. The term borrower is defined, as I said earlier on the first page of the instrument, as Caldwell Jones, Jr., a married man. It does not define borrower on the first page to include Mrs. Jones. So she's a surviving spouse, but she's not a surviving borrower. Yes, Judge, that's our position. But then she's a party to the contract. Your Honor, she is a signatory to the contract, and I'm not sure why that is. But she did execute the document, as it appears that she did, at least. What's the difference between a party and a signatory? Why is she a signatory if she's not a party and doesn't have rights under the contract? Well, a couple of things, Judge. Number one, in Georgia, we're a title theory state, so a security deed such as this one is one that actually conveys legal title to the lender as security for a loan, as opposed to the great state of Florida, Judge, which is a lien theory state where the lender takes out a mortgage on the property. So in this case, Mrs. Jones didn't have an interest to convey, which she would need to be a proper party to a security instrument. She wasn't pledging an interest in the property because she didn't have one at the time this instrument was executed. So the reason that she executed the document, Your Honor, I can't speculate. That's not in the record. It's not before the court. The fact is she did, but it's also in the record, Judge, that she didn't execute the loan agreement or the promissory note. And the position throughout this case, I want to get back to that, is that she was a non-bar surviving spouse. She didn't sign a note or anything like that? No, Judge, and I don't think you'll hear Mr. Meacham say that because that's not the case. And as I said earlier, Mrs. Jones was not even eligible for a reverse mortgage at the time. I believe she was, as I said, 52 years old. You have to be at least 62 to be eligible under this reverse mortgage program. So HUD dropped the ball here because they had a responsibility to protect people like Mrs. Jones, and they didn't do it. And Livewell obviously knew because otherwise they would not have put the contract together in this way to characterize Mrs. Jones as a surviving spouse rather than a surviving borrower. Well, Judge, I will say, going to Judge Vincent's point, my client did not originate this loan. We're in assignee. So we wouldn't have had anything to do with the origination of this particular loan in the way things were drafted. So with that said, as an assignee, of course, we take subject to the rights and obligations of the S&R. Your Honors, getting back to the primary issue that has been briefed and has been raised on appeal, the issue is whether or not the decided statute imposes an obligation on my client as a private mortgage lender to do anything, really. The statute on its face imposes an insurability obligation upon the Secretary. It doesn't impose an obligation upon a private mortgage lender such as my client. That statute is not incorporated into the loan agreement. It's not incorporated into the security deed. It is, in fact, a private contract between two consenting parties, the originating lender and Mr. Jones, and with Mrs. Jones as a signatory for reasons that I don't know. There have been a number of courts throughout the country that have looked at similar issues like this one. We've cited them in our brief. The Aldi case, the Takas case, the Jeansome case from the Fifth Circuit, which I believe is the only appellate decision, federal appellate decision that I've seen. It's an unpublished opinion from the Fifth Circuit that doesn't go into great depth on the issue. But those cases agree with our position on this, Your Honor. We didn't brief some of the cases that might go the other way on this issue because, frankly, I didn't think it was an issue. But I am prepared to discuss those if the court would like. There are two cases out of state court in Florida, the Third Circuit, the Smith v. Mortgage Solutions, Inc. case. It's 200 Southern 2nd, 221, and then the Edwards v. Reverse Mortgage Solutions. But Florida cases are based on Florida law, which always requires spousal signature adjoining. Right, Judge. And that's why I alluded to the homestead provisions in Florida earlier. And for other reasons, too. Yes, Judge. And, in fact, I will say that those cases both came out of the Third District Court of Appeals down in Florida. That court has actually since issued a contrary opinion on this issue. The case is 1 West Bank FSB v. Palmera. That is a 2018 Florida app. Lexus 5149 came out this past April. And that was based on a more fully fleshed out record that the court had in front of it. It had all of the accompanying documents that went into this reverse mortgage, such as the note, the loan agreement, all the documents that formed the loan transaction, which weren't available to that court at the time. Since Judge Thrash issued his order in our case, we've also had two courts cite with approval Judge Thrash's opinion. One out of the bankruptcy court up in Massachusetts this past June. That case is D'Alessio v. CIT Bank NA. The cite is 2018 Bankruptcy 1717. The other is Picard v. Financial Freedom. That's 2017 U.S. District Lexus 192470 out of the Western District of Michigan. Are there any other alternatives to foreclosure available to LiveWell? Judge, those options would be a subject of negotiation between LiveWell and HUD. Judge Thrash alluded to a couple of those options in his order. But I believe also Apley pointed out that we're not required to do those things. I think I heard you say she would have been ineligible to get this reverse mortgage because of her age. At the time of origination. At the time it was originated. Yes, Judge. That is correct. She was 52, I think you said. She was 52, yes, Judge. The statute requires the borrower to be a minimum of 62 years of age. That's correct. And that's my time, Your Honor. The court has no other questions. All right. Thank you, Mr. Flynn. We'll hear again from Mr. Meacham. Mr. Meacham, can I ask you to answer two questions just in the course of your rebuttal however you see fit? One, we do as a court require parties to air their arguments in their briefs so that we don't have a situation like this where your adversary is sort of hit for the first time with what I take to be a brand new argument about the language of the contract. So one, why shouldn't we deem waived the arguments that you've been dealing with about the contract itself? Two, is it true, this is an easy one I suppose, that the contract itself defines borrower on page one to be Caldwell? The first answer, Your Honor, is in the brief, the definition of homeowner was always of our opinion that it was a borrower. Now maybe we should have said that more distinctly, but that was a reason that we distinctly went to the statute to talk about the surviving homeowner and the definition of it. Your second question? Just does the contract define borrower on page one to be Caldwell Jones? Well, I happen to have the contract here, Your Honor, and I don't know what page Mr. Flynn was referring to, but I don't see any language which says that Caldwell Jones is the only borrower. Maybe he can direct me to the page or I can look at his document. Well, I hate to waste your time, so you go ahead and say what you want to say. I wanted to address, Judge Vinson, you asked me specifically about pages. And so page 41 of the contract requires the signature of both Ms. Jones and Caldwell Jones. Also, pages 54 once again require the signatures of both Caldwell Jones and Mrs. Jones. And those documents are entitled Fixed Rate Equity Conversion, Second Security Deed, and First Security Deed. I would just ask the question or pose the issue that if the interest, as Mr. Flynn said, to the house was no longer in Mrs. Jones, then why would you have a person who has no interest in real estate to be required to sign a document transferring or pledging the real estate? No different, Judge Newsom, than if you sold your house and your mortgage company required Dan Meacham to sign on the line and I have no interest in your house. The answer may be that she wasn't eligible. Excuse me? I said maybe the answer is that she was not eligible. But, Your Honor, that may be. That would be speculative. And I see nowhere in this contract, and I have read it ad nauseam, that says that she's not eligible, so she needs to sign. The last— Can I ask you just one quick question before you move on? So you said at pages 41 and 54 the contract requires her to sign. What does it say specifically? Does it say sort of borrower and spouse sign here, or is it just a place where she happened to have signed the contract? I'm going to read it to you specifically, Judge Newsom. First signature line would be on page 54. By signing below, borrower accepts and agrees to the terms and covenants contained in this security instrument and any rider parentheses S executed by borrower and recorded with it. Caldwell Jones, and not only is it signed, their names are typed. Their names are typed below the signature line. Caldwell Jones, Jr., Vanessa D. Jones, dated 7-28-2014, 7-28-2014, witness whereof borrower had signed and sealed this security instrument, signed and sealed and delivered 28th day of July 2014 in the presence of—and there's a witness there. Got it. So there's like a—what you're saying is there's a designated line for her to sign. It's not just that she happened to sign it. There's a designated line. She was just there, and she just felt good about her husband and wanted to sign it. Got it. That did not happen. Okay. Mr. Meacham, excuse me. No, no, no. Please. The statute addresses HUD. You didn't name HUD as a party. Maybe in retrospect you should have, but maybe you can tell us why you didn't. Well, Your Honor, HUD was named by Bennett, in case of Bennett, and Bennett more or less was an equal protection argument that surviving spouses should be treated the same as the borrower. So I did not think that that would have been the best bang for my buck. We got the injunction for the foreclosure in Henry County, so I thought that I had probably done a great job for my client. I did not think of adding HUD as a defendant. I would say this, Your Honor, and I'm sure that Mr. Flynn probably forgot. The reverse mortgage was executed initially with American Nationwide Mortgage and assigned on the same date of July 28, 2014, to the appellee, Live Well. So it's not a situation where Nationwide Mortgage did something and Live Well came along several years later and they're stuck with it. Same day of this closing, it was assigned. Let me try to get to the... Well, I think your time is up and I think we understand your argument. All right, thank you. Thank you, Mr. Meacham. It's been a pleasure. Thank you, Mr. Meacham. Thank you. Flynn. Have a great day, Your Honor. You too.